UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PETER A. PELLETIER,                          :
    Plaintiff                                :
                                             :
vs.                                          :    C.A. NO. _____
                                             :
SWAROVSKI U.S. HOLDING LIMITED,  :    **JURY TRIAL DEMANDED**
SWAROVSKI LIGHTING, LTD.,                    :
and DANIEL J. COHEN.                         :
    Defendants                               :

## COMPLAINT AND JURY DEMAND

### Introduction

Peter A. Pelletier ("Mr. Pelletier") brings this action for damages and equitable relief against his former employers, Swarovski U.S. Holding Limited, Swarovski Lighting, Ltd., and Daniel J. Cohen (collectively the "Defendants"). Less than a month after Mr. Pelletier opposed Defendants' discriminatory plans to terminate a female executive, they retaliated against him. They falsely accused him of sexual harassment, and in the ensuing "investigation," they discriminated against him on the basis of his age and gender. Defendants failed to take any action against younger executives well known to have committed acts of misconduct, including but not limited to having sex with subordinates and engaging in workplace bullying, yet they summarily terminated Mr. Pelletier based on allegations that were not even the subject of a complaint, let alone credible violations of company policy.

### Parties

1.      Mr. Pelletier is a resident of Plymouth, Massachusetts. He is a 70-year-old male, and at all times relevant to this Complaint, he was over the age of 40.

2.      Swarovski U.S. Holding Limited ("Swarovski U.S.") is a Rhode Island domestic profit corporation with its principal place of business in Cranston, Rhode Island.

3.      Swarovski Lighting, Ltd. ("Swarovski Lighting") is a foreign corporation, organized under the laws of the State of New York, which is registered to do business in Rhode Island.  It is a wholly-owned subsidiary of Swarovski U.S., it consistently and intentionally does business with Rhode Island retailers, it markets its products to Rhode Island consumers, and it is managed, at least in part, by Swarovski U.S. executives operating out of Rhode Island.

4.      Daniel J. Cohen ("Mr. Cohen") is the President of Swarovski U.S. and a resident of East Greenwich, Rhode Island.  At all times relevant to this Complaint, he was Mr. Pelletier's direct supervisor.  He is a member of the Swarovski family and a member of the Executive Board of Swarovski U.S.'s parent company, which is privately held.  Upon information and belief, he is also one of a limited number of shareholders in Swarovski U.S.'s parent company.

### Jurisdiction and Venue

5.      Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Mr. Pelletier's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., because they arise under the laws of the United States.

6.      This Court has supplemental jurisdiction over Mr. Pelletier's state law claims under 28 U.S.C. § 1367 because they are so related to Mr. Pelletier's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue lies in this Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f) because all three of the Defendants are subject to this Court's personal jurisdiction and because a substantial part of the events or omissions giving rise to Mr. Pelletier's claims, including but not limited to many of Defendants' unlawful employment practices, occurred in the District of Rhode Island.

## Facts

8.     For over 35 years, Mr. Pelletier has been a management consultant specializing in turning around underperforming companies.  Mr. Cohen has personally known Mr. Pelletier for more than a decade.

9.     In December 2012, Mr. Cohen approached Mr. Pelletier about providing consulting services to Swarovski Lighting.  Mr. Cohen had been overseeing Swarovski Lighting's management since 2007, and it was losing money.  In 2011, it had lost approximately $7 million.  In 2012, it had lost approximately $10 million.  Mr. Cohen sought Mr. Pelletier's assistance returning the company to profitability.

### 2013
### Mr. Pelletier Provides Consulting Services to Defendants

10.     Beginning in mid-January 2013, Defendants engaged Mr. Pelletier through his firm, Pelletier & Associates, Inc., as an independent contractor.  Mr. Pelletier estimated that it would take him and his team 18 months to start growing Swarovski Lighting's business again.  It ended up only taking approximately half that time.

11.     By the fall of 2013, Swarovski Lighting was turning a profit again.  Over the course of the year, Mr. Pelletier traveled extensively on the company's behalf throughout the United States and internationally.  He helped the company to eliminate 75 positions, met with key customers and suppliers, and placed a necessary emphasis on maintaining the company's sales volume.

12.     Through his efforts, Mr. Pelletier helped Swarovski Lighting to cut approximately $5 million in annualized costs.  These results, however, required a lot of time and effort.  Mr. Pelletier charged for his services on an hourly basis, so Defendants realized they would be able to save money by hiring him as a full-time employee.

3

**2014**
**Defendants Hire Mr. Pelletier as an Employee**

13.     In November 2013, Mr. Cohen reached out to Mr. Pelletier to explore whether he would be interested in continuing his work for Defendants as an employee.  After a course of negotiations, Mr. Pelletier and Swarovski U.S. executed a contract (the "Contract") on January 15, 2014.

14.     Under the Contract, Mr. Pelletier was appointed Swarovski U.S.'s "Global Vice President – Lighting Business" for a term ending on December 31, 2015.  The parties agreed that Mr. Pelletier would report only to Mr. Cohen, and in exchange for his services, Mr. Pelletier would receive (among other benefits) a base salary and be eligible for an annual bonus worth up to 50% of that base salary.  Mr. Cohen assigned him to work for Swarovski Lighting.

15.     By hiring Mr. Pelletier as an employee, Defendants stood to save approximately 25% off what they had been paying for his services as a consultant.  In exchange, Mr. Pelletier received the protection of a "Just Cause" provision in the Contract, which specified that if he was terminated without "Just Cause," he would receive certain severance benefits, including but not limited to a significant portion of his base salary and annual bonus.

16.     After signing the Contract, Mr. Pelletier's work for Swarovski Lighting continued.  Under his leadership, the company introduced 70 new products, improved sales, increased pricing, reduced overhead, and streamlined its manufacturing operations.  Mr. Cohen repeatedly and publicly praised Mr. Pelletier's performance.

**Summer 2014**
**Mr. Pelletier Opposes Defendants' Gender Discrimination**

17.     On July 15, 2014, Mr. Pelletier met with Mr. Cohen in Cranston, Rhode Island.  Mr. Cohen asked Mr. Pelletier when he would be firing two of Swarovski Lighting's executives.

4

One of them (the "Female Executive") was one of only two female executives at the company. Mr. Pelletier told Mr. Cohen that she was on a performance improvement plan and that he had already met with her about it. As for the other executive, he told Mr. Cohen that he was already working on his termination with Defendants' human resources departments in Plattsburgh, New York and Wattens, Austria. Mr. Cohen told Mr. Pelletier: "Just get rid of them. Don't let local HR groups get in the way."

18.     On July 31, 2014, Mr. Cohen e-mailed Mr. Pelletier to "confirm" that Mr. Pelletier would be firing the Female Executive that day. Mr. Pelletier discussed Mr. Cohen's e-mail with Lee Ann Pray, Swarovski Lighting's Director of Human Resources. They agreed that it would be wrong to fire the Female Executive because she was a ten-year company veteran, because there was only one other female executive at the company, because she had not been given a fair opportunity to correct her performance as similarly-situated male employees had, and because she had complained to Human Resources in the past about harassment by her male supervisor. Thus, to terminate her would have subjected the company to liability for gender discrimination and retaliation. Ms. Pray described her as a "walking lawsuit."

19.     After conferring with Ms. Pray, Mr. Pelletier e-mailed Mr. Cohen back about the Female Executive. He reminded Mr. Cohen that she was on a performance improvement plan and that he had been meeting with her on a weekly basis. He said that the Female Executive was an integral part to an ongoing project and that he did not plan to terminate her unless she failed to improve and they had evidence of it.

20.     In response to Mr. Pelletier's e-mail, Mr. Cohen wrote Mr. Pelletier back and told him not to "backslide" on the Female Executive. He wrote: "We need to make these changes as we discussed."

5

**August-October 2014**
**Defendants Retaliate Against Mr. Pelletier**

21.     Mr. Pelletier did not terminate the Female Executive, and less than a month later,

Defendants were "investigating" him for what they alleged to be "sexual harassment."  Ms. Pray

told Mr. Pelletier that the "investigation" was being run out of Cranston, Rhode Island; *i.e.*, Mr.

Cohen's office.

22.     Defendants accused Mr. Pelletier of violating their harassment policy despite

knowing that he had not, according to its own terms.  Neither of the two women involved had

submitted a complaint against Mr. Pelletier; neither alleged any conduct that was sexual in

nature, that was objectively and subjectively offensive, or that had affected the terms and

conditions of their employment; and both told Defendants that they did not want to get human

resources involved.  One said that she just wanted to talk with Mr. Pelletier about her concerns

and said that he would be "humiliated."  The other admitted that she did not "help the situation,"

and that she would have "never" brought Mr. Pelletier up had Defendants not asked her.  She

also said that she considered Mr. Pelletier "harmless."

23.     During meetings with Defendants, including but not limited to a meeting with Mr.

Cohen, Mr. Pelletier responded to each one of Defendants' allegations and repeatedly and

emphatically denied doing anything inappropriate.  Mr. Pelletier, who is a father to two

daughters and a grandfather to two granddaughters, has supported women professionals

throughout his career.  The suggestion that he acted inappropriately towards anyone was

abhorrent to him.

24.     On October 1, 2014, approximately a month after Defendants' "investigation"

began, Mr. Cohen terminated Mr. Pelletier.  Mr. Pelletier had refused to sign a "Last Chance

Agreement" that contained false allegations, that would have placed unreasonable restrictions

upon him, and that was retaliatory, discriminatory, and in violation of his Contract.  During a

meeting with Mr. Pelletier, Mr. Cohen had also misrepresented (a) that Mr. Pelletier had placed

the company in "grave danger" and (b) that at least five other employees had signed similar Last

Chance Agreements in the past.  Neither was true.

25.    Mr. Cohen retaliated against Mr. Pelletier because he had opposed Defendants'

attempt to terminate the Female Executive, which would have amounted to gender

discrimination and/or illegal retaliation.  After Mr. Pelletier was gone, Defendants followed

through on their plans to terminate her.

**Defendants Discriminate Against Mr. Pelletier**

26.    The scrutiny that Defendants leveled upon Mr. Pelletier and the severe

punishment that they imposed upon him was disproportionate to the way they had handled more

troubling and substantiated accusations against younger, similarly-situated employees in the past.

27.    Before Mr. Pelletier started consulting for Defendants in 2013, Swarovski

Lighting was co-managed by two younger employees.  One of them – a Global Vice President –

was the subject of repeated complaints to human resources by the Female Executive, who

alleged that he had engaged in workplace bullying and harassment.  Upon information and belief,

Defendants did not investigate him, they did not discipline him, and they did not require him to

sign a last chance agreement that would have required him to admit false allegations.

28.    When Mr. Pelletier started consulting for Defendants, Lee Ann Pray told him

about a Regional Director at Swarovski Lighting who had engaged in sexual relations with

several subordinate female employees.  According to Ms. Pray, this behavior was well known

among those employed at the company's headquarters.  This individual was younger than Mr.

Pelletier, and upon information and belief, Defendants did not investigate him, they did not

discipline him, and they did not require him to sign a last chance agreement that would have required him to admit false allegations.

29.     During a lunch meeting on or about August 28, 2014, Swarovski Lighting's Director of Finance (also younger than Mr. Pelletier) mocked a female marketing manager in front of several coworkers about her eating and sanitary habits.  Reportedly, it was so upsetting to this woman that she broke down and cried in front of everyone.  Lee Ann Pray subsequently summoned her to the human resources department to make sure that she was okay.  She told Ms. Pray that she was fine, and upon information and belief, Defendants did not conduct any further investigation into the Director of Finance, they did not discipline him, and they did not require him to sign a last chance agreement that would have required him to admit false allegations. Significantly, the woman involved in this incident was the same person who subsequently told Ms. Pray that Mr. Pelletier was "harmless," yet Defendants still investigated and disciplined him.

30.     On or about September 19, 2014, Mr. Pelletier learned about another inappropriate incident that Defendants had ignored.  During or immediately after a company-sanctioned event held in Austria in June 2014, one of Swarovski Lighting's Global Directors – an individual who reported directly to Mr. Cohen – got drunk, sexually harassed, and horrified two female employees.  One of them, a receptionist, was seven months pregnant at the time with her first child.  Among other things, this individual reportedly told the receptionist that after his wife had their first child, his sex life deteriorated because his wife was not in the same shape physically as she had been before.  This individual was also younger than Mr. Pelletier.  Other executives knew about the incident, but upon information and belief, Defendants did not investigate this individual, they did not discipline him, and they did not require him to sign a last chance agreement that would have required him to admit false allegations.

31.     The manner in which Defendants conducted their "investigation" against Mr. Pelletier also discriminated against him on the basis of his gender.  They followed up on statements provided by female employees but not his.  They sought out witnesses to support the female employees' claims and failed to interview witnesses identified by Mr. Pelletier who would have provided exculpatory evidence.  They subjected him to cross-examination by in-house counsel without subjecting the female employees to similar scrutiny.

**Defendants Defame Mr. Pelletier**

32.     During and after their "investigation" into Mr. Pelletier, Defendants gossiped to his coworkers, friends, and other third parties about him being under investigation for "sexual harassment."  Defendants knew there was no basis for accusing Mr. Pelletier of sexual harassment, yet upon information and belief, they spread this false information about him for no reason other than to hurt him and his reputation.

33.     During a business trip with Mr. Pelletier in mid-September 2014, Swarovski Lighting's European Operations Manager acted upset, and told Mr. Pelletier (out of the blue) that he "just thought [he] should know" about the incident earlier that summer involving Mr. Cohen's direct report and the pregnant receptionist.  Upon information and belief, he was upset because Mr. Cohen had told him about his plans to discipline Mr. Pelletier for alleged sexual harassment.

**Proceedings before the R.I. Commission for Human Rights and
the U.S. Equal Employment Opportunity Commission**

34.     On February 11, 2015, Mr. Pelletier filed a Charge of Discrimination against Defendants with the United States Equal Employment Opportunity Commission (the "EEOC") and the Rhode Island Commission for Human Rights (the "RICHR").  Among other things, it alleged that Defendants retaliated against him and discriminated against him based on his age and gender.

35.     On or about December 17, 2015, Mr. Pelletier requested that the EEOC and

RICHR grant him the right to sue under 42 U.S.C. § 2000e-5(f)(1) and R.I. Gen. Laws § 28-5-

24.1(a).  The EEOC granted that request on January 25, 2016.  The RICHR granted that request

on December 23, 2015.

## COUNT I – TITLE VII
### Retaliation
### 42 U.S.C. § 2000e-3(a)
### (Swarovski U.S. and Swarovski Lighting)

36.     Mr. Pelletier hereby repeats, re-alleges, and incorporates by reference each and

every allegation pleaded in the foregoing paragraphs as if they are fully set forth herein.

37.     Defendants retaliated against Mr. Pelletier because he opposed practices

forbidden by Title VII.

38.     Defendants' retaliation against Mr. Pelletier was intentional.

39.     Defendants acted with malice or ill will, or they acted with reckless or callous

indifference to Mr. Pelletier's right to be free from retaliation.

40.     Swarovski U.S. and Swarovski Lighting's retaliation against Mr. Pelletier violated

Title VII, 42 U.S.C. § 2000e-3(a).

## COUNT II – STATE FAIR EMPLOYMENT PRACTICES ACT
### Retaliation
### R.I. Gen. Laws § 28-5-7(5) and § 28-5-7(6)
### (All Defendants)

41.     Mr. Pelletier hereby repeats, re-alleges, and incorporates by reference each and

every allegation pleaded in the foregoing paragraphs as if they are fully set forth herein.

42.     Defendants retaliated against Mr. Pelletier because he opposed practices

forbidden by the State Fair Employment Practices Act.

43.     Defendants' retaliation against Mr. Pelletier was intentional.

10

44.     Defendants acted with malice or ill will, or they acted with reckless or callous indifference to Mr. Pelletier's right to be free from retaliation.

45.     Defendants' retaliation against Mr. Pelletier violated the State Fair Employment Practices Act, R.I. Gen. Laws § 28-5-7(5) and § 28-5-7(6).

### COUNT III – ADEA
### 29 U.S.C. § 623(a)(1)
### (Swarovski U.S. and Swarovski Lighting)

46.     Mr. Pelletier hereby repeats, re-alleges, and incorporates by reference each and every allegation pleaded in the foregoing paragraphs as if they are fully set forth herein.

47.     Defendants discharged or discriminated against Mr. Pelletier because of his age.

48.     Defendants' discrimination against Mr. Pelletier was intentional.

49.     Defendants acted with malice or ill will, or they acted with reckless or callous indifference to Mr. Pelletier's right to be free from discrimination.

50.     Swarovski U.S. and Swarovski Lighting's discrimination against Mr. Pelletier violated the ADEA, 29 U.S.C. § 623(a)(1).

### COUNT IV – STATE FAIR EMPLOYMENT PRACTICES ACT
### Age Discrimination
### R.I. Gen. Laws § 28-5-7(1)(ii) and § 28-5-7(6)
### (All Defendants)

51.     Mr. Pelletier hereby repeats, re-alleges, and incorporates by reference each and every allegation pleaded in the foregoing paragraphs as if they are fully set forth herein.

52.     Defendants discharged or discriminated against Mr. Pelletier because of his age.

53.     Defendants' discrimination against Mr. Pelletier was intentional.

54.     Defendants acted with malice or ill will, or they acted with reckless or callous indifference to Mr. Pelletier's right to be free from discrimination.

55.     Defendants' discrimination against Mr. Pelletier violated the State Fair Employment Practices Act, R.I. Gen. Laws § 28-5-7(1)(ii) and § 28-5-7(6).

## COUNT V – TITLE VII
### Gender Discrimination
### 42 U.S.C. § 2000e-2(a)(1)
### (Swarovski U.S. and Swarovski Lighting)

56.     Mr. Pelletier hereby repeats, re-alleges, and incorporates by reference each and every allegation pleaded in the foregoing paragraphs as if they are fully set forth herein.

57.     The manner in which Defendants conducted their "investigation" against Mr. Pelletier discriminated against him based on his gender.  Had their "investigation" been conducted without discrimination, they would not have terminated him.

58.     Defendants' discrimination against Mr. Pelletier was intentional.

59.     Defendants acted with malice or ill will, or they acted with reckless or callous indifference to Mr. Pelletier's right to be free from discrimination.

60.     Swarovski U.S. and Swarovski Lighting's discrimination against Mr. Pelletier violated Title VII, 42 U.S.C. § 2000e-2(a)(1).

## COUNT VI – STATE FAIR EMPLOYMENT PRACTICES ACT
### Gender Discrimination
### R.I. Gen. Laws § 28-5-7(1)(ii) and § 28-5-7(6)
### (All Defendants)

61.     Mr. Pelletier hereby repeats, re-alleges, and incorporates by reference each and every allegation pleaded in the foregoing paragraphs as if they are fully set forth herein.

62.     The manner in which Defendants conducted their "investigation" against Mr. Pelletier discriminated against him based on his gender.  Had their "investigation" been conducted without discrimination, they would not have terminated him.

63.     Defendants' discrimination against Mr. Pelletier was intentional.

64.     Defendants acted with malice or ill will, or they acted with reckless or callous indifference to Mr. Pelletier's right to be free from discrimination.

65.     Defendants' discrimination against Mr. Pelletier violated the State Fair Employment Practices Act, R.I. Gen. Laws § 28-5-7(1)(ii) and § 28-5-7(6).

## COUNT VII – RI CIVIL RIGHTS ACT OF 1990
### R.I. Gen. Laws § 42-112-1 et seq.
### (All Defendants)

66.     Mr. Pelletier hereby repeats, re-alleges, and incorporates by reference each and every allegation pleaded in the foregoing paragraphs as if they are fully set forth herein.

67.     Defendants' age discrimination against Mr. Pelletier was a violation of the Civil Rights Act of 1990, R.I. Gen. Laws § 42-112-1 et seq.

## COUNT VIII –DEFAMATION
### (All Defendants)

68.     Mr. Pelletier hereby repeats, re-alleges, and incorporates by reference each and every allegation pleaded in the foregoing paragraphs as if they are fully set forth herein.

69.     Defendants made false statements about Mr. Pelletier to his coworkers, friends, and other third parties.

70.     Defendants' false statements about Mr. Pelletier were not privileged.

71.     Defendants knew or should have known that their statements were false.

72.     Defendants' false statements against Mr. Pelletier were reckless and motived by malice, ill-will, or spite.

73.     Defendants' false statements against Mr. Pelletier constituted per se defamation. Nevertheless, they also caused him damages, including but not limited to harm to his personal and professional reputations.

## COUNT IX – VIOLATION OF RIGHT TO PRIVACY
## R.I. Gen. Laws § 9-1-28.1
### (All Defendants)

74.     Mr. Pelletier hereby repeats, re-alleges, and incorporates by reference each and every allegation pleaded in the foregoing paragraphs as if they are fully set forth herein.

75.     Defendants published private information about Mr. Pelletier – including but not limited to the existence of the investigation against him and its subject matter – that so misrepresented his character that it would have been objectionable to any ordinary person in his circumstances.

76.     As a result of the foregoing, Defendants have deprived Mr. Pelletier of his right to privacy in violation of R.I. Gen. Laws § 9-1-28.1.

## COUNT X – BREACH OF CONTRACT
### (Swarovski U.S. and Swarovski Lighting)

77.     Mr. Pelletier hereby repeats, re-alleges, and incorporates by reference each and every allegation pleaded in the foregoing paragraphs as if they are fully set forth herein.

78.     Swarovski U.S. and Swarovski Lighting terminated Mr. Pelletier without "Just Cause" and failed to provide him with the payments and benefits required under the Contract.

79.     Swarovski U.S. and Swarovski Lighting failed to honor their own policies and procedures, including but not limited to their "Harassment, Discrimination, & Retaliation" policy, during the course of their "investigation" and termination of Mr. Pelletier.

80.     Swarovski U.S. and Swarovski Lighting failed to deal with Mr. Pelletier fairly and in good faith.

81.     As a result of Swarovski U.S. and Swarovski Lighting's breach of contract, Mr. Pelletier has been harmed.

14

## PRAYER FOR RELIEF

**WHEREFORE,** Mr. Pelletier requests that this Court do the following:

A.     Enter judgment in Mr. Pelletier's favor on all counts of this Complaint;

B.     Order Defendants to cease and desist from further unlawful employment practices;

C.     Order Defendants to cease defaming Mr. Pelletier;

D.     Order Defendants to cease violating Mr. Pelletier's right to privacy;

E.     Order Defendants to reinstate Mr. Pelletier to his former position with back pay, including but not limited to the economic value of all benefits and raises to which he would have been entitled had Defendants not committed an unlawful employment practice, plus interest;

F.     Order Defendants to remove any references to their "investigation" and Mr. Pelletier's termination from his personnel file;

G.     Award Mr. Pelletier damages, including but not limited to compensatory damages, against the Defendants in an amount sufficient to compensate Mr. Pelletier for all of his losses and damages, plus interest;

H.     Award Mr. Pelletier punitive damages;

I.     Award Mr. Pelletier his costs, expenses, and attorneys' fees, as appropriate, and other such relief as the Court deems just, appropriate, and equitable.

## Jury Demand

Mr. Pelletier hereby demands a trial by jury on all issues so triable.

## Lead Counsel Designation

Mr. Pelletier hereby designates Robert C. Corrente as his lead counsel in this matter.

Respectfully submitted,

PETER A. PELLETIER

By his attorneys,


/s/ Robert Clark Corrente
/s/ Matthew H. Parker
Robert Clark Corrente (#2632)
Matthew H. Parker (#8111)
WHELAN, CORRENTE, KINDER & SIKET LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Phone:  (401) 270-4500
Fax:  (401) 270-3760
rcorrente@wckslaw.com
mparker@wckslaw.com

Dated:  March 8, 2016

16